THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. ROGELIO VÉLEZ FELICIANO, Defendant and Appellant.

No. CR-70-119.     Decided September 25, 1972.

*José Ángel Cangiano* for appellant. *Gilberto Gierbolini, Solicitor General,* and *Bienvenido Vélez Coello, Assistant Solicitor General,* for The People.

MR. JUSTICE RIGAU delivered the opinion of the Court.

Appellant was accused and convicted by the court of several violations of the Narcotics Act. He was sentenced to serve concurrently from 5 to 10 years in the penitentiary for each violation. On appeal he assigns the following sole error:

"The trial court erred in failing to take into consideration and duly weighing the evidence and the defense of alibi invoked by appellant, particularly when the same was not overcome and it conclusively established the physical impossibility to the effect that appellant could have been in Guánica on the dates on which the offenses are charged."

The evidence for the prosecution of the sole witness who testified that he witnessed the criminal acts consists of the testimony of the undercover agent. The latter testified that in March 1969 he was on duty in the Ponce area. When the prosecuting attorney asked him what was his mission at that time he answered: "To buy drugs." He testified that on the 22nd of that month and year he was in Guánica; that he was in the company of a drug addict whom he identified as "el Gordo" but whose name and address he did not know; that he went for the purpose of looking for one who sold marihuana "and we did not find him." Then el Gordo told him

"since we are here, I know one Quito Vélez who sells heroin bags."

The undercover agent continued testifying that they went to Vélez' residence and he was not at his house; that they went up to a business where they stopped; that when they got there el Gordo pointed at and identified Quito Vélez; that el Gordo introduced them and there the agent bought a deck of heroin from Vélez for $6.00. The alleged transaction took place at about 4:20 in the afternoon of that day, March 22, 1969.

The undercover agent also testified that he saw Vélez again on the 29th of the same month and year, at the latter's residence in Guánica. He testified that he went to Vélez' house and that there, on the porch of the house, at 12:15 noon, Vélez sold him another bag of heroin. He cites Vélez in the sense that after giving him the drug the former told the agent to go away "that he did not want anybody to know that he was selling drugs."

After arraignment, appellant notified in due time his intent to invoke the defense of alibi. Rule 74 of the Rules of Criminal Procedure. He also waived the trial by jury.

The evidence for the defense tended to show that during the two days herein concerned, the 22nd and the 29th of March, appellant was present at his work with the firm Fluor Western Inc. in Peñuelas. Appellant had lunch from 12:00 to 1:00 p.m. at the place of his work. When the workday was over he arrived at his house at about 5:00 p.m. Appellant's son, who worked also with the same employer and who also lived in Guánica, testified that he took appellant back and forth from his house to his work in his automobile. He testified that appellant went to his work on the 22nd and 29th of March. Appellant testified that the trip from his house to his work took about an hour.

John Giberson, Office and Payroll Manager of Fluor Western Inc., testified also. Two cards and two pay state-

ments and the pay envelopes, corresponding to the two weeks during which it is alleged the facts charged occurred, were admitted in evidence. Giberson testified that by the 22nd and 29th of March 1969, the firm had an employee named Rogelio Vélez Feliciano; that on March 22 they worked from 7 to 4; that lunch time is from 12 to 1. He testified that on March 22, according to the aforementioned cards and pay statements, Rogelio Vélez Feliciano worked at Fluor Western; that he worked 8 hours, from 7:00 a.m. to 4:00 p.m.

He also testified that on March 29, 1969, appellant worked with said company; that he worked 8 hours, from 7 to 4 in the afternoon; that Saturday was paid to Rogelio Vélez on the basis of time and a half the first four hours and double time the next four.

■ The payment cards—one for each day—presented in evidence, are dated March 22 and 29, 1969. The pay statements, which are forms prepared by accounting machines, have the name of Rogelio Vélez Feliciano and are dated March 23 and 30, 1969, date which closes the weekly period which covers each one of those pay statements. These four documents of the firm Fluor Western Inc. show that appellant received extraordinary pay for the workday covering the two aforementioned days. Said documentary evidence was prepared by a third party extraneous to the instant case— appellant's employer—during the normal course of its operations, about a month and a half before appellant was accused of the offenses charged against him. Said documentary evidence was duly identified by the officer in charge of the same and there is no reason whatsoever to suspect that it was fabricated evidence.

■ The least that can be said is that the evidence for the defense should have raised, and it sufficiently raises, a problem of reasonable doubt. It seems that the trial court rejected the probative values of the aforementioned documen-

tary evidence since the prosecuting attorney asked witness Giberson whether it was possible for an understanding to exist between a foreman and an employee so that the latter would collect without having worked, and Giberson answered "it may be." Of course, the mere possibility of doing such a thing does not show that it was done, nor even that it is probable that it was done. In order to show how deceitful that idea is, it suffices to indicate that it is possible for a million adult persons in the country to commit each one a felony today, however, that mere possibility does not justify the conclusion to the effect that that has happened. Although possible, it is not even likely to happen. On the contrary, with regard to the documentary evidence presented the presumption ordered by the Law of Evidence is that the private transactions were fair and regular, unless the contrary is established. 32 L.P.R.A. § 1887(19). There was no evidence to the contrary in that sense.

The situation we have described, in our opinion, makes it irresistible to conclude that in the instant case there arises at least one reasonable doubt which makes it necessary to reverse the judgment and to acquit the defendant. See *People* v. *Gautier Oliveras*, 99 P.R.R. 136, 138 (1970); *People* v. *Moreu Pérez*, 96 P.R.R. 59, 62 (1968). Judgment will be rendered in accordance with the foregoing.